UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>DARNELL A. MOORE )<br>)<br>Defendant. )<br>) | CRIMINAL ACTION<br>NO. 1:00-10247-WGY-1 |

YOUNG, D.J.                                                    November 14, 2018

**MEMORANDUM & ORDER**

Darnell A. Moore ("Moore") filed a petition under 28 U.S.C. § 2255 to vacate and correct his sentence pursuant to Johnson v. United States, 135 S. Ct. 2551 (2015). Suppl. Mot. Correct Sentence ("Def.'s Mot.") 1, ECF No. 107. This Court held that Moore's petition fell under the second and successive bar. The Court of Appeals for the First Circuit granted certification to Moore's petition, however, and ordered the district court to redo its original analysis. Moore v. United States, 871 F.3d 72, 85 (1st Cir. 2017) (citing 28 U.S.C. § 2244(b)(4)).

Moore argues that since applicable case law renders improper his categorization and sentencing as a career offender pursuant to section 2K2.1(a)(2) of the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines"), he ought be resentenced. Def.'s Mot. 1.

Moore filed his section 2255 petition in June 2016, Mot. Correct Sentence, ECF No. 97, which was within one year of the Supreme Court's June 2015 decision in Johnson v. United States, 135 S. Ct. 2551 (2015), and therefore within the one-year statute of limitations for filing a habeas corpus petition. See 28 U.S.C. § 2255(f)(3).

Moore asked the First Circuit to apply the new rule of constitutional law announced in Johnson directly to the Sentencing Reform Act of 1984 ("SRA").[1] Moore, 871 F.3d at 80. In considering this issue, the First Circuit explained that the pre-Booker SRA "made the Guidelines binding on district judges" and that the Supreme Court has "consistently held that the Guidelines have the force and effect of laws." Id. at 81 (quoting United States v. Booker, 543 U.S. 220, 233-34 (2005) (opinion of Stevens, J.)). The First Circuit continued that, while the SRA and Booker do not use the term "fix" to describe the effect of the mandatory Guidelines on sentences, "a statute found to 'bind[]' in Booker necessarily 'fix[es]' under Johnson[] . . . ." Moore, 871 F.3d at 81-82 (alteration in original).

---

[1] Sentencing Reform Act of 1984, Pub. L. No. 98-473, 98 Stat. 1987 (codified in various provisions of chapters 18 and 28 of the United States Code).

[2]

The SRA, the First Circuit explained, also used the same language as the Armed Career Criminal Act's residual clause to provide the standard by which this Court fixed Moore's sentence. Id. at 82. Moreover, the First Circuit agreed that "[t]he residual clause of the career offender guideline is identical to the residual clause of [the Armed Career Criminal Act]." Id. at 80 n.5. "The two clauses have also been interpreted in the same way." See id. (citing United States v. Ramírez, 708 F.3d 295, 305-07 (1st Cir. 2013); United States v. Giggey, 551 F.3d 27, 38-41 (1st Cir. 2008)).

The First Circuit thus ultimately granted Moore the certification he requested. See id. at 74. They certified that his motion "contain[s] . . . a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." Id. (alteration in original) (citing 28 U.S.C. § 2255(h)). The First Circuit left it up to this Court to "redo the very analysis performed [by it in its] opinion before entertaining a successive § 2255 motion." Id. at 85.

In his motion, Moore argues that the new rule Johnson created invalidates the residual clause of the career offender guideline applied at his sentencing -- which occurred before Booker made the guidelines advisory. Def.'s Mot. 25; see Booker, 543 U.S. at 245 (opinion of Breyer, J.).

[3]

Since Beckles v. United States, 137 S. Ct. 886, 897 (2017), where the Supreme Court limited its decision to sentences imposed under the advisory guidelines, there are two other cases in this District that consider the constitutionality of the residual clause in the career offender guidelines as applied pre-Booker. Roy, 282 F. Supp. 3d at 425-27; Reid v. United States, 252 F. Supp. 3d 63, 66-68 (D. Mass. 2017) (Ponsor, J.). In each, the district court held that the residual clause violated the Due Process Clause and allowed the petitioner's motion to correct his sentence. Roy, 282 F. Supp. 3d at 427-28; Reid, 252 F. Supp. 3d at 66, 68. The court in Reid emphasized that "Beckles itself makes clear that its holding does not govern sentences imposed under the non-advisory, pre-Booker sentencing regime, and . . . the logic of the Johnson decisions makes them fully applicable in a pre-Booker, mandatory Guidelines context." 252 F. Supp. 3d at 64. The court in Roy also observed that "Beckles does not preclude application of Johnson[] to the residual clause of the career offender guideline." Roy, 282 F. Supp 3d at 427.

Moore was sentenced in 2002, Electronic Clerk's Notes, ECF No. 63, under guidelines that "the pre-Booker SRA made binding . . . on judges, making them vulnerable to vagueness challenges under the rule adopted in Johnson[]." See Roy, 282 F. Supp. 3d

[4]

at 428. As did my colleagues in Roy and Reid, this Court holds the pre-Booker career offender guideline void for vagueness.

Thus far the analysis is in Moore's favor, but the government has one final arrow in its quiver. Before Moore's sentencing, the government filed a motion under Guidelines section 5K1.1, ECF No. 69, which permits the Court to sentence below the low end of the Guidelines if the Government files a "substantial assistance" motion (as it did here). See Wade v. United States, 504 U.S. 181, 182-83 (1992) (observing that section 5K1.1 "permits district courts to go below the minimum required under the Guidelines if the Government files . . . a motion."); United States v. Mariano, 983 F.2d 1150, 1155 (1st Cir. 1993) (same). Thus, the government argues that under Beckles, in the particular circumstances of this case, the career offender residual clause, identical to that in the ACCA, is "not subject to a vagueness challenge under the Due Process Clause" because here the "Guidelines do not fix the permissible range of sentences." Gov. Opp'n Def. Suppl. Mot. Correct Sentence ("Gov. Opp'n") 3, 7, ECF No. 116 (internal citations and quotations omitted) (citing Beckles, 137 S. Ct. at 892).

This is sophistry, pure and simple.[2] We must always remember that the oxymoronic mandatory guidelines had the force

---

[2] Dr. Seuss got it right; judges ought imitate Horton:
   I meant what I said
   And I said what I meant . . .
Dr. Seuss, Horton Hatches the Egg passim (Random House 1940); see Hon. Robert E. Keeton, Judging 1 (1990) ("Judicial choice at its best is reasoned choice candidly explained."). Tragically, the United States Sentencing Guidelines are still rife with sophistry throughout and, despite their demotion to mere advisory status, see Booker, 543 U.S. at 245, they continue to guide judges into indefensible conundrums with all too unjust practical consequences.
   Consider but two examples:
   First, a federal judge alone may decide to impose an enhanced sentence based on a fair "preponderance of the evidence standard," U.S.S.G. § 6A1.3 cmt., even though the rules of evidence expressly do not apply to sentencing hearings, Fed. R. Evid. 1101(d)(3), and such enhancements are not considered fact finding at all. But see Cunningham v. California, 549 U.S. 270, 281 (2007) (Ginsburg, J.) ("This Court has repeatedly held that, under the Sixth Amendment, any fact that exposes a defendant to a greater potential sentence must be found by a jury, not a judge, and established beyond a reasonable doubt, not merely by a preponderance of the evidence."); see also United States v. Gurley, 860 F. Supp. 2d 95, 100-01 (D. Mass. 2012); United States v. Kandirakis, 441 F. Supp. 2d 282, 330 (D. Mass. 2006) (both cases applying Cunningham to federal sentencing hearings). Scholars tell us that a mode of analysis learned in the civil context tends to show up in criminal sentencing as well. Elliott Ash, Daniel L. Chen & Suresh Naidu, Ideas Have Consequences: The Impact of Law and Economics on American Justice 22-27 (preliminary version) (Oct. 22, 2018) (on file with authors).
   Surely the reverse is true: a mode of analysis used in criminal sentencing may appear in civil proceedings, too. The judge who confidently imposes a more severe sentence based on the multi-level hearsay in a pre-sentence report is far more likely to usurp the jury function and "find" it reasonable to grant summary judgment under Federal Rule of Civil Procedure 56.
   And, second, what of the charade of "acceptance of responsibility"? U.S.S.G. § 3E1.1. In today's world, where 97.2% of federal offenders plead guilty, see Fiscal Year 2017 Guideline Sentences: National Data, U.S. Sentencing Commission

of law and that law was unconstitutional. Booker, 543 U.S. at 226-27 (opinion of Stevens, J.). For 17 years I -- along with every other federal judge -- imposed sentences on offenders that today would be unconstitutional. No more.

True, I had some discretion concerning the sentence to be imposed on Moore. But that had always been the case. Even the mandatory guidelines had an upper and lower limit. The filing of the motion under section 5K1.1 did nothing more than potentially lower the bottom limit. What's more, the government's argument altogether ignores the very real phenomenon of "anchoring," i.e. the effect of the guidelines themselves on particularized sentencing decisions. Hughes v.

---

(2017), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2017/stats_Nat.pdf, and virtually all of them get the discount for "acceptance," see Offenders Receiving Each Chapter Three Guideline Adjustment, U.S. Sentencing Commission (2017), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2017/Table18.pdf, it is evident that those who rely on the constitutional guarantee that "the trial of all crimes, save for impeachment, shall be by jury," U.S. Const. amend. VI, are suffering a penalty. Is it an unconstitutional penalty? After all, the mandatory guidelines were declared unconstitutional precisely because they operated to usurp the jury's role. Booker, 543 U.S. at 233-34 (opinion of Stevens, J.). Even putting this question to one side, what is clear is that the Sentencing Commission considers sentences that incorporate the three-level "acceptance" reduction to be "sufficient but not greater than necessary," 18 U.S.C. § 3553(a), to accomplish the statutory goals of sentencing. Perhaps a three level reduction is appropriate in **every** case, regardless of the means of conviction, plea or trial.

United States, 138 S. Ct. 1765, 1775 (2018); see also Molina-Martinez v. United States, 136 S. Ct. 1338, 1349 (2016) (determining that the Guidelines "serve as the starting point for the district court's decision and anchor the court's discretion in selecting an appropriate sentence."); Peugh v. United States, 569 U.S. 530, 541 (2013) ("The post-Booker federal sentencing scheme aims to achieve uniformity by ensuring that sentencing decisions are anchored by the Guidelines and that they remain a meaningful benchmark through the process of appellate review."); In re Clayton, 829 F.3d 1254, 1259-60 (11th Cir. 2016); United States v. Ingram, 721 F.3d 35, 40 (2d Cir. 2013) (Calabresi, J., concurring); United States v. Turner, 548 F.3d 1094, 1099 (D.C. Cir. 2008).

Furthermore, I declined to depart downwards from the guidelines range on the government's 5K1.1 motion because Moore failed to appear at his original sentencing hearing. Statement of Reasons 4, ECF No. 65. I thus sentenced Moore without any regard to the 5K1.1 motion at all. The unconstitutional career offender guideline, then, not only anchored my decision, but also fully informed the sentence that I imposed within a certain range. This is not a theoretical construct. I well remember sentencing Moore. I know what I did and why.

This is a far cry from the truly advisory system ushered in by remedial Booker. See 543 U.S. at 226-27 (opinion of

Stevens, J.); United States v. Rodriguez, 630 F.3d 39, 42 (1st Cir. 2010) (welcoming and valuing a truly advisory guidelines regime). Beckles does not control here.

This Court, therefore, ALLOWS Moore's petition to vacate and correct his sentence under 28 U.S.C. § 2255. A new sentencing hearing will be promptly scheduled.

**SO ORDERED.**

/s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE